You may be seated. 312-01-50, people of the state of Illinois, I believe, by Justin Nicolosi v. Yovita Guzman-Ruiz, appellant Santiago Durango. Mr. Durango, are you ready? Good afternoon, Your Honors. Mr. Nicolosi, may it please the Court, my name is Santiago Durango, I'm an assistant defender with the Office of the State Appellate Defender, and I represent the defendant appellant, in this case, Ms. Yovita Guzman. Your Honors, in this case, Ms. Guzman, entering to a fully negotiated plea of guilty to possession with intent to deliver of 2,000 grams, at least 2,000 grams, but not more than 5,000 grams, of cannabis with intent to deliver, and was sentenced to 30 months' probation. After the conclusion of her probation, she was deported, without knowing that she would be deported, as a result of her plea. Today, I will be asking this Court to order that her plea be set aside, because it was not a knowing, involuntary plea for two reasons. First, because her lawyer failed to inform her that she would be deported if she pled guilty to the offense in this case. And second, because the judge misadvised her as to the severe penalty of deportation. This Court may take two approaches to granting relief in this case. Both approaches would be on firm ground. Under the first approach, this Court may grant relief on the basis that counsel was ineffective in not informing the defendant that if she pled guilty, she would be automatically deported. Under the second approach, this Court could find and grant relief on the basis that the judge erred in misadvising her about the penalty of deportation in lessening the likelihood that she would be deported, and indicating that it was optional, when in fact it was mandatory. And under this second approach, the judge's misadvice would render the plea not knowing, involuntary, and provide a basis for setting it aside. As I mentioned, under the first approach, the first approach is centered on counsel's performance. In this case, it's clear under Padilla v. Kentucky that counsel was ineffective in failing to inform the defendant that she would be automatically deported for the offense that she was pleading guilty to. There is no question in this case that he was deficient in that regard. He had a duty to do so. He failed to do it. Under this approach, this Court would also need to find that she was prejudiced by counsel's failure to inform her of the mandatory deportation consequences of her plea. This Court can find prejudice under various scenarios. The standard for looking at whether she would have been prejudiced, whether she was prejudiced, is to ask whether the choice to reject the plea would have been rational on her part. In this case, it would have been rational. And first of all, because as a result of her deportation, the life she had as a single mother with two daughters in this country was destroyed. Had she been tried and convicted, she would have gone to prison and then been deported. So we're looking at whether a rational person would have still pleaded guilty. Don't we have to look at whether, had she gone to trial, she'd have a defense? Because a life as a single mother is not going to be enhanced by being in a penitentiary and then getting deported when she walks out the door. Yes. Your Honor, that very question was addressed by the Kentucky Court of Appeals in Padilla's case once it was remanded by the United States Supreme Court. The Court there noted that the question, the question the Court needs to address is whether it would have been a rational choice, not whether it would have been the best choice. And on that basis, ordered that his plea be set aside. And this is a defendant, Padilla, who was facing 40 years in his case, which is much more than what the defendant was facing in this case. Another observation made by the Court of Appeals in Kentucky, which applies in this case, is that if the defendant would have known about the mandatory deportation consequences, she may have tried to bargain for a lower, down to a lower offense, that would not have exposed her to the mandatory deportation. Now, we know that that happens in this state. In fact, it happened in this case somewhat because they did, the plea was to a lesser amount than what the factual basis indicated was found in this case.  A defendant can plead to a non-existent offense if the defendant will benefit from the plea. So it would have been possible in this case to allow her to plead down in order to remove that possibility. But you'd have to assume that the state's attorney would go along with that, right? Yes. And the facts in this case also, there's, the record indicates a difference as to whether, there is a factual basis indicating that there was strong evidence, but there's also indications in the record that there may have been a basis for moving to suppress the evidence. We don't know. But if she would have known that deportation was inevitable, there's no reason why she should not, she would not have filed a motion to suppress in this case. So setting aside the strength of the evidence, in People v. Correa, our Supreme Court just presumed prejudice, didn't even get to the prejudice prong, and just presumed it. And that, the court did not explain why it presumed prejudice in setting aside a guilty plea in that case where counsel had misadvised the deportation consequences of his plea. The court did not explain why it was presuming the prejudice in that case. But it's implicit that they were relying on the principle that counsel was totally absent during a critical phase of the proceedings. And that principle comes down from chronic versus New York. I'm sorry, United States versus chronic, which was a companion case to Strickland. So if counsel is so deficient that it amounts to no representation during a critical phase of the trial, prejudice is presumed. And in this case, I think the court would be on firm ground finding that counsel was absent, essentially, during a critical phase of the proceedings in not informing his client of this very important consequence of pleading guilty. Well, the statute says deportable, doesn't it? It's mandatory. Padilla versus Kentucky made it clear, Your Honor, that anything over 30 grams requires a mandatory deportation. In fact, it wasn't discussed in the briefs, but in my research, it's clear that over the years, the discretion to avoid deportation has been lessened and lessened and lessened. And we're at a point now where if you are convicted of an offense that involves more than 30 grams of cannabis, it is automatic. And that's what happened in this case. So I think under this first approach, the court would be on all fours with what happened in the Padilla case, both in the Supreme Court and in the courts of Kentucky, where the Supreme Court found that counsel was ineffective, and the Court of Appeals in Kentucky found that prejudice had been shown and set aside the plea. The second approach which this court may take is finding that the judge's misadvice as to the consequences of pleading guilty rendered the plea not knowing and voluntary,  for setting aside the plea. The law is well established that when a judge misadvises a defendant about the possible penalties, especially the maximum sentence, the plea is not voluntary and can be set aside on that grounds alone. In this case, the judge did not inform the defendant correctly about the severe penalty. And when I say severe penalty, I am quoting, I'm sorry, the particularly severe penalty. When I say that, I am quoting Padilla, because it results in what happened in this case, a complete banishment that affects families, affects them to a great degree. In that regard, Your Honor, I would like to point out that the defendant's daughter is in the court today, sitting behind counsel's table. So under this second approach, this court may grant relief based on the judge's misadvice. This court may grant relief under both approaches because both approaches are available to the court in this case. Is it possible that we can blur those issues into one? Because a trial judge's admonishments pursuant to statute are mandatory regarding deportation, but certainly if a judge goes that extra mile and says if you plead guilty, you could be deported, you may be deported, you will be deported, it can cure any ineffective assistance of counsel. Yes. But in this case, the court didn't cure it, it reinforced it. Yes. So I'm not sure I necessarily agree that we have to look at it as two separate approaches. I think it just goes to prejudice,  You're correct, Your Honor. This case presents a situation where error after error after error occurred. This was not a fair proceeding for the defendant. And on that basis, that cumulative unfairness, her plea should be set aside. It was just not a knowing plea. And so you're correct, Your Honor. And, in fact, there's a case that I cited in one of my briefs, in fact, addressing that same question that you just presented in finding that when the judge gives some sort of admonishments that actually reinforce the error instead of correcting the error, that is considered as supporting a finding of prejudice. Is there any case law out there about a judge overstepping bounds? I know a judge can't act as a prosecutor, but this judge was almost acting as defense counsel, trying to give her advice. Is there any case law out there that says that's inappropriate? And Mr. Mearsman, I just happen to know, is a fine public defender, and you can almost hear him trying to assure her as not a judge but as an attorney. And when a judge steps out of that role, is there any case law that addresses the consequences of that? I'm sure that judges sometimes cross the line. I cannot think of a case off the top of my head right now but there's another aspect of this case along those lines where he was essentially sitting in appeal of his own ruling at the post-conviction petition, which... He did say, I wish you had appealed my ruling. Yes, and then he rendered a judgment on his own ruling previously, which appears to be authorized under the Act, under the Act, the Separation of Powers Doctrine, that's been held to be permissible. But... Counsel has two minutes. Thank you. But the judge did clearly overstep what was appropriate or correct when he misadvised the defendant, and belatedly so, without asking her whether she wanted to plead anew about the consequences of the automatic deportation and downplaying those consequences. Your Honors, as I mentioned, this case simply presents numerous errors, error after error. Counsel was ineffective. The court, rather than correcting counsel's errors, actually made matters worse by suggesting that deportation was not automatic and perhaps not likely to happen at all. Well, I mean, where does the automatic part come from? It's not the statutory language. You say it's just the policy of ICE or...? No, Your Honor. Padilla v. Kentucky made it clear that it's statutory. It is automatic. Aren't those for federal offenses? My understanding is that in the federal system, if you're convicted of a federal offense, it's made clear in the Padilla case that anything now over 30 grams is automatic deportation. But aren't those for federal charges? No, Your Honor, those are for state and federal charges. And, in fact, I believe Padilla was charged under Kentucky law. I could be wrong about that, but I believe he was charged under Kentucky law. Here's what I'm wondering about. If a lawyer counts a client who's a resident alien or whatever and tells them a plea deal has been offered, but if you plead to this, you absolutely guaranteed will be deported. And so the defendant says, okay, I'm not pleading. So then you've got a sweet 30-month probation and a plea deal, and then he says, well, if I'm going to be deported, I'm not pleading. So then the defendant pleads, gets rung up on a more serious offense, and gets 20 years in jail, and then deported. Can't they come back and say, well, the statute says deportable. I would have taken that plea deal. In other words, it seems to me that we've got to catch 22 here. Well, Your Honor, I think it's clear from Padilla that there is a duty to inform the defendant. The defendant has a right to know that they will be automatically deported because of the severity of the penalty of the automatic deportation. At that point, it's up to the defendant to decide, but it's not a knowing decision if the defendant is not aware of that consequence. The defendant needs to know that in order to enter into a knowing involuntary plea. Now, the defendant may choose to roll the dice. It may not be the best decision. That's not the question. The question is whether it would be reasonable under the circumstances for the defendant to roll the dice. Well, I guess from bonus, the Supreme Court doesn't decide who and who doesn't get deported. It's the ICE that makes that decision. It's Congress. It's Congress, Your Honor. Well, but in practice, but the statute doesn't say on it. It says deportable. And ultimately, the fine folks at ICE can decide whether to deport somebody or not. Your Honor, I don't believe it works that way. It is automatic. Over 30 grams, it's automatic. Thank you. Your Honor, I ask that under either of these two approaches or both combined, the defendant's plea should be set aside. Thank you. Thank you. When you're ready, Mr. Nicolosi. Good afternoon, Your Honors. May it please the Court. Mr. Durango. Your Honors, this is an ineffective assistance issue, and the ineffective assistance of counsel claims have two prongs, and both of them need to be considered here. The first is, of course, whether or not counsel's performance was deficient. And the people submit it was not deficient performance. What counsel said to the defendant was, quote, I cannot guarantee what the government is going to do to you if you plead guilty. He said that before the plea. As Justice Schmidt pointed out, the statute does not say anything about automatic deportation or shall be deported or any language similar to that. It says, quote, deportable, end quote. Now, Padilla basically says that language specifically commands removal. I don't know where they get that from because the word deportable, I don't believe that really needs any definition. The suffix able means it can be done. If something is fixable, it means it can be fixed. Justice McDade, who I noticed is not on the panel, provided a dissent in Guzman, and she's saying the same argument I'm bringing up here. Deportable does not mean shall be deported. The statute, I think, is very, very clear. Under Padilla, what counsel needs to advise defendants of is that if there is a risk of deportation, they need to be informed of that. And Padilla also says that the deportation consequence is truly clear. The advice must be as well. But because the word is deportable, not shall be deported, then the risk was not truly clear. She was able to be deported, and counsel said, I cannot guarantee what the government is going to do to you. That basically means that that should have sent home the message that, hey, you could be deported. So in other words, counsel complied with Padilla by informing defendants that there was a risk of deportation. That's why the people submit that counsel's performance was not deficient here. But isn't the problem that he then goes a step further and says, I'm not sure what they're going to do, but it's unlikely that they're going to do this. Isn't that sort of the same issue as was presented in Padilla, where not only do they just take that extra affirmative step that they didn't really need to take, and by doing so they lull this defendant into accepting a plea that's not in their best interest? Well, Your Honor, I believe both statements made by counsel are opinion. I can't guarantee what they're going to do. In the second statement, they're basically his opinion. And they're not gospel. They're not, you will be deported, period, you won't be deported, period. They're opinion. But I'm going to transition, Your Honor, from that into the prejudice prong, which I think takes care of anything that happens in the deficient performance prong. Because under the prejudice prong, a petitioner must convince the court that the decision to reject the plea would have been rational under the circumstances. And as Justice Schmidt, again, he's been making my arguments for me all day, he said that if the defendant would have chose to forego the plea and go to trial, then if, for example, assuming arguendo, this is mandatory deportation, you're going to have a significant jail sentence, and then you get released and you're going to be deported, as opposed to if you just take the plea deal, then you're just dealing with deportation. What's worse, jail plus deportation or deportation? It's not rational. Whether or not it's the best decision or whatever, one is clearly worse than the other. And going even further than that, the defendant's claim that she would have rejected this plea is just a bare allegation. In Peña Romero, a Fourth District case from last year, the bare allegation made by the defendant there was that the appellate court said that's insufficient based on the evidence in the case. And the evidence in that case, the court said, was overwhelming. So the court said if you forego the plea and go to trial, you're still going to be convicted because this evidence is overwhelming. You're still going to be deported. It wouldn't be irrational to reject the plea. The same goes in this case. This was a controlled delivery of a large box of cannabis. The defendant signed for it. It was addressed to her cousin. And she said later, post-Miranda, that she had done this before. She looked in the box. It was something green. It's probably something illegal is the conclusion she said. She was paid to take these boxes. What she did in the controlled buy, she put it in the garage, put a blanket over it. Post-Miranda, she said that her cousin told her, hey, when you get these boxes, put them in the garage, put the blanket over it. She did exactly what the cousin, known drug dealer, said. Your Honor, the evidence here is overwhelming. And in the face of that overwhelming evidence, the defendant never, in her PC or in the affidavit attached to the PC, she never claims that she was innocent. And she never forwards any kind of plausible defense. In Supreme Court cases of Risley in 2003, Hall in 2005, say, bare allegations aren't good enough. You have to present some sort of claim of innocence or a plausible defense. There's none here. And I believe that the defendant cannot in any way show prejudice, because it would have been completely irrational to accept that plea, or to reject the plea. I'm sorry. I tried to make a nice forceful last sentence, and I can't do it. It would not have been rational to reject the plea in that circumstance. When you examine what Judge Mearsman said, you know it's unlikely you're going to go. In fact, ICE hasn't even been here. They haven't put a hold on you at all. I mean, he's making a prediction. He is. What's your view of that prediction, if defense counsel had said that? Would you be arguing that that was a reasonable decision? That it was not ineffective? Honestly, Your Honor, I believe the statements were quite similar. What the judge said, one of his quotes was, quote, obviously they can always pick you up and deport you, end quote. The counsel said I cannot guarantee what the government is going to do. I kind of see those as pretty similar. I think the judge went an extra step. But you and I may honestly disagree on that by saying it's okay. It's okay. And coming from somebody with this black robe on sometimes means more. I understand, Your Honor. I understand. But I think, again, we need to focus more on the prejudice prong than the actual performance of counsel here. I think, as I explained, regardless of what the trial judge said or the counsel said, defendants claim that she would have rejected the plea needs to be rational, and I don't think in the face of the evidence. Even the trial judge, he said things about the deportation, but he also said that the evidence here is not close and that there is no defense. He said those things. He said there was no defense to this. Counsel, I believe it was the defendant's affidavit, she said that counsel told her that she had a weak case. It seems like everyone was kind of in agreement this was a very, very, very weak case with very strong evidence in support of the state. And in the face of all of this, when looking at Risley and Hall and Pena-Romero, they all say their allegation that you would have proceeded the trial is insufficient. And especially in cases with evidence as strong as this, regardless of what happens, how the court deems the performance of counsel, in addition to the trial judge's statements, they are dwarfed by the lack of prejudice in this case. Are there any other questions? The trial judge's statement was made after the plea, wasn't it? I don't know, Your Honor. I think I'm a little confused on that. I think it was, yeah, maybe he took the plea and then right thereafter. Yeah, I guess I'm a little confused on that. But again, Judge Schmidt, regardless, I think the prejudice prong really carries the day in this particular case. Thank you. Thank you. Your Honor, the state argues that it's not clear whether deportation is mandatory, whether it is at all clear from this statute. I would direct the court to pages 1480 of Padilla v. Kentucky, where the United States Supreme Court explains that deportation is mandatory unless the attorney general exercises the limited remnants of equitable discretion vested in the attorney general. The court later on, and this is at page 1483 of the decision, the court notes that when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear. I mean, Padilla was all about whether counsel's advice to his client in that case that he might be deported was good enough under the circumstances of having possessed more than 30 grams of cannabis. And the Supreme Court found that counsel had a duty to inform the defendant, Padilla, that he was going to be deported. That is the same situation here. So I'm not giving an opinion. I am just following what the Supreme Court has set out in its decision. And I understand that, but what about the prejudice prong? Yes. As I explained before, the prejudice prong in this case, the Padilla decision, if it's followed from the Supreme Court down to the courts of Kentucky, and I cited several federal opinions that found that under the test, which is whether it was reasonable to reject the plea, the importance was not being deported. That was the most important factor was not getting deported. They were willing to roll the dice, perhaps serving the prison term. They were willing to roll the dice in a trial in order to avoid deportation, the automatic deportation. That was the predominant factor as phrased by the Kentucky Court of Appeals. Several federal courts have agreed. That is the predominant factor. But if you've only got two dice and you've got to roll a 13 to not be deported, don't you look at this as an objective standard with any reasonable person under these circumstances? In other words, if there's no defense to the charges, it's not just, gee, I wouldn't have done it, but don't you ever look with any rational person and say, I'd rather go to prison first before I get deported? That's assuming that inevitable conviction, but that's why we have trials. It's not inevitable. There's also the possibility of perhaps bargaining down to an offense that would result in perhaps equal punishment without the consequences of deportation. And that reminds me that the sentence in this case was just 30 months probation. There must be some alternate offense that would not have exposed the defendant to 30 months probation that would have exposed her to 30 months probation without exposing her to automatic deportation. So it would have been possible for her to bargain for an offense to be for a plea under an offense that would have resulted in a similar punishment but without the consequence of deportation. Counsel has one minute. Isn't that really the argument I think that I hear is that deportation is better than a prison sentence plus deportation, but Padilla in a much older case, Delgadillo, seems to say that for many people that the separation and exile from the US and then the separation from the family is worse than the prison sentence. And that is those line of cases establishes the prejudice prong for those circuit or federal district cases that rolling the dice, perhaps going to prison, still outweighs the automatic prejudice associated with the automatic deportation. That is correct, Your Honor. Well, the bottom line here is the trial judge didn't seem to think she was going to be deported. That's correct. And he has kind of a flip comment at the end, so good luck, ma'am. Don't be taking any packages. That's correct, Your Honor. The whole case is this. If the trial judge didn't think she was going to be deported, then why should she think she's going to be deported? That's where I'm struggling, and I know my colleagues are going to help me decide that issue. You're correct, Your Honor. Yes, I agree. And if I may just mention quickly before my time is up, the state relies heavily on Pena-Romero. In that case, the defendant was advised that he would be deported. That whole discussion in that case about prejudice is fortuitous. And the reliance on Hall in that case is also misplaced because in Hall, the prejudice component of the ineffective assistance of counsel claim related to whether it had been shown at the second stage of the post-conviction proceeding, and the Supreme Court found that it had. It's a totally different situation. We're not at the second stage. We got past the second stage when we were at an evidentiary hearing in this case. That's correct. Thank you. So, Your Honors, I request on behalf of the defendant, respectfully request that this court set aside her plea and order that the case be set for trial. Thank you very much. Thank you, Your Honor. Thank you to both of you. You did a nice job of arguing this case. We'll be taking the matter under advisement and rendering the decision without undue delay. Thank you. For now, we'll stand in recess for a panel change.